Milton A. Holmes v. Commissioner.
Holmes v. Commissioner
Docket No. 6315.
United States Tax Court
1946 Tax Ct. Memo LEXIS 257; 5 T.C.M. (CCH) 108; T.C.M. (RIA) 46047; February 27, 1946
*257 Held, stock owned by taxpayer did not become worthless in 1940 and he is entitled to deduct the loss sustained on the sale thereof in 1941. Ben A. Matthews, Esq., 10 Pine St., New York 5, N. Y., for the petitioner. J. R. Riggles, Jr., Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax against Milton A. Holmes for the year 1941 in the sum of $3,914.03. The sole issue in controversy is whether or not the petitioner sustained a deductible loss in 1941 upon the sale of preferred stock of the St. Louis-San Francisco Railway Company. A question concerning the petitioner's right to deduct in the taxable year a short-term capital loss carry-over from 1940 depends wholly upon the decision in the controverted issue. Findings of *258 Fact Most of the facts are contained in a stipulation, which we incorporate herein by this reference. The following summary of the facts will serve to present the issue raised: The petitioner is a resident of New Jersey, having his office at 26 Broadway, New York, New York. His return for the year in controversy was filed on the cash basis with the collector of internal revenue for the second district of New York. The petitioner purchased 200 shares of 6 per cent non-cumulative preferred stock, par value $100, of the St. Louis-San Francisco Railway Company (hereinafter referred to as Frisco) on April 17, 1928, at a cost of $19,936.54 and purchased 200 shares of such stock on January 5, 1931, at a cost of $13,035. On or about November 18, 1941, the petitioner sold on the New York Stock Exchange 200 shares of such stock for $7.49 and on December 4, 1941, sold 200 shares for $6.61. The shares of both the common and preferred stock of Frisco from the time each was issued in 1916 and 1928, respectively, were continuously quoted on the New York Stock Exchange and bought and sold thereon until October 13, 1944, when they were delisted on the New York Stock Exchange. Since that date, *259 such shares have continuously been quoted, bought and sold through brokers engaged in the sale of over-the-counter securities and quoted in the daily quotation sheets of the National Quotation Bureau, Inc., of New York. The number of shares of Frisco stock sold on the New York Stock Exchange and the price range for the same from 1938 to October 13, 1944, are as follows: PREFERRED STOCK
Number of Shares
Traded in on New
Year
High
Low
York Stock Exchange
1938
3 3/8
1 1/8
89,000
1939
2    3/8
67,100
1940
7/9
1/8
52,700
1941
1/2
1/16
49,100
1942
1 1/8
1/8
53,730
1943
3 1/8
1/2
282,000
Jan. 1 to Oct. 13, 1944
2 3/8
5/8
214,000 The daily quotation sheet of the National Quotation Bureau, Inc. for October 15, 1945 quotes the stock at 75 cents bid, offered at $1.00 per share. COMMON STOCK
Number of Shares
Traded in on New
Year
High
Low
York Stock Exchange
1938
1 3/8 3/8 63,900
1939
7/8 1/4 67,100
1940
3/8 1/16
30,700
1941
1/4 1/32
61,600
1942
7/16
1/32
71,200
1943
1 3/4 5/32
258,200
Jan. 1 to Oct. 13, 1944
1     1/4 122,400
*260 The daily quotation sheet of the National Quotation Bureau, Inc. for October 15, 1945, quotes said stock at 25 cents bid, offered at 50 cents per share. The authorized issue of Frisco preferred stock consists of 2,000,000 shares par value $100, of which 491,574 are now and have been outstanding during all times here material. These shares have preference as to non-cumulative dividends at 6 per cent per annum, and upon liquidation are entitled to share equally with the common shares in the assets of the company. They are callable, as a whole only, at 115 on any dividend date on 60 days notice; they have full voting power. Dividends were paid beginning November 1, 1928 and quarterly thereafter through November 1931; no dividends were paid thereafter. The authorized issue of Frisco common stock consists of 2,500,000 shares, par value $100, of which 655,432 shares are now and have been outstanding during all times here material. These shares have equal voting rights with the preferred stock and are entitled on liquidation of the company to share the assets equally with the preferred. No dividends were paid on the stock in the years 1916 to 1924, inclusive; dividends were paid in the *261 amount of $5.50 per share in 1925; $7.00 in 1926; $7.75 in 1927; and $8.00 from 1928 to 1930, inclusive; and $2.00 in 1931; no dividends were paid thereafter. The consolidated statement of income and profit and loss of the Frisco Company, for years ended December 31, shows the following: 1938
1939
1940
194
Gross Income
$ 1,312,858
$ 3,994.709
$ 5,452,328
$ 12,550,931
Total fixed charges
12,804,130
12,748,345
12,653,243
12,704,784
Times charges earned before Federal
income tax
0.10
0.31
0.43
0.98
Times charges earned after Federal
income tax
Net income
$11d,532,950
d$ 8, 805,922
d$ 7,264,510
d$ 223,663
Balance beginning of year
$68d,932,852
$81d,491,735
d$ 91,233,776
$100d,994,405
Profit and loss balance
$81d,491,735
$91d,233,776
$100d,994,405
$102d,338,535
Earned on preferred
nil
nil
nil
nil
Earned on common
$22d.09
$17d.94
$15d.58
$4d.84
1942
1943
1944
Gross income
$ 17,465,297
$ 24,263,477
$ 18,373,377
Total fixed charges
12,503,007
11,903,639
11,866,021
Times charges earned before Federal income tax
2.25
2.78
2.71
Times charges earned after Federal income tax
2.18
2.02
1.54
Net income
$ 14,767,239
$12,145,509
$ 6,365,969
Balance beginning of year
$102d,338,535
$101d,659.738
d$ 83,940/631
Profit and loss balance
$101d,659,738
d$ 83,940,631
d$ 80,285,722
Earned on preferred
$30.04
$24.71
$12.95
Earned on common
$18.03
$14.03
$ 5.21
*262 In 1933 Frisco filed in United States District Court at St. Louis, Missouri, a petition for reorganization under section 77 of the Bankruptcy Act and on October 28, 1933, permanent trustees were appointed by the court. Prior to 1940 several plans of reorganization were filed with the Interstate Commerce Commission, none of which was approved. On July 6, 1940, Division No. 4 of the Interstate Commerce Commission proposed a plan, which was modified on November 16, 1940, and which was to be made effective as of January 1, 1940. This plan made no provision for the interests or equities of general creditors or for holders of Frisco preferred or common stock. On December 30, 1940, the court entered an order providing that all parties interested in the plan and having objections or motions to modify it, should file such objections or motions with the court by January 31, 1941. Hearings on this plan were subsequently conducted from time to time and on July 25, 1942, the court ordered the plan to be returned to the Interstate Commerce Commission for reconsideration. Subsequent to this order an appeal was taken by the Reconstruction Finance Corporation and the Railroad Credit Corporation *263 but pending preparation of the appeal, due to the increased earnings from operations, it became possible to pay off certain bonds and to settle the claims of the Reconstruction Finance Corporation and the Railroad Credit Corporation. These claims totaled $17,556,763. The Interstate Commerce Commission formulated a new plan, which was embodied in its "Report of the Commission on Further Consideration" under date of July 4, 1944, and "Second Supplemental Report" under date of October 2, 1944, which reports were filed with the court on July 15 and October 7, 1944, respectively. The provision contained in the 1940 plan with respect to non-participation of the stockholders remained unchanged. On October 11, 1944, the court entered its order requiring all objections to the new plan to be filed by November 6, 1944. Pursuant thereto, objections were filed only by the debtor corporation and holders of certain unsecured claims. All parties in interest whose claims were recognized by the plan appeared in support of it and only those whose interests were excluded under the plan, including the debtor corporation on behalf of the stockholders, appeared in opposition. After full hearing, the *264 court approved the plan in its opinion rendered on March 16, 1945, as amended March 27, 1945. In his return for 1941 the petitioner claimed a long-term capital loss deduction in the sum of $16,478.72, representing 50 per cent of the difference between the cost of the stock to him and the net profits realized on its sale. This deduction was disallowed by the respondent upon the ground that the stock had become worthless in 1940. Petitioner also claimed a short-term capital loss carry-over of $384.32. It was stipulated that if the Court finds that the claimed loss on the 400 shares of Frisco preferred stock was sustained in the year 1940, there will be a net loss for that year and the petitioner will not be entitled to the claimed deduction of $384.32 on account of net short-term capital loss carryover for the taxable year herein. If the Court finds that the claimed loss on the 400 shares of Frisco preferred stock was sustained in the taxable year herein, the net income for the year 1940 will exceed the net short-term capital loss for that year and the petitioner will be entitled to the claimed deduction on account thereof in the amount of $384.32. The Frisco stock did not become *265 worthless in 1940. Opinion VAN FOSSAN, Judge: The only controverted issue is whether or not the petitioner is entitled to a deduction in 1941 for a loss sustained on the sale in that year of his stock in Frisco. It is the respondent's position that no loss is deductible in 1941 because the stock became worthless in 1940. He contends that the "identifiable event" establishing the time of the loss as 1940 was the filing in that year by the Interstate Commerce Commission of a plan of reorganization of Frisco which completely eliminated the interests and equities of the holders of the preferred stock. The petitioner may not claim a deduction for a loss in a year other than that in which the loss actually occurred. Nor may the taxpayer establish a loss in one year by a sale when his stock has, in fact, become worthless in a prior year. To allow a deduction under such circumstances would allow the taxpayer to manipulate his loss. Whether or not the stock here involved was actually worthless in 1940 is a question of fact, concerning which the respondent's determination is prima facie correct. The burden is on the petitioner to overcome this presumption by his evidence. We think *266 the evidence here sufficiently shows that the petitioner's stock had value throughout 1940. The fact that the balance sheet of Frisco for that year disclosed an excess of liabilities over assets is not conclusive, in the face of other and more compelling evidence of value. See . The evidence shows that the stock of Frisco was actively traded on the New York Stock Exchange continuously up to October 13, 1944, when it was delisted on that Exchange. During 1940, 52,700 shares of the preferred stock, more than 13 times the number of shares held by the petitioner, were traded in at prices ranging from 7/8 to 1/8. While these prices are low, compared with the price paid by the petitioner, they show that the stock was not without value at that time. This is further shown by the fact that the stock continued to be traded in after 1940. In 1941, 49,100 shares were traded in at prices ranging from 1/2 to 1/16. In 1942 and 1943 the number of shares traded in rose to 53,730 and 282,000, respectively, while the prices increased to a high of 1 1/8 and a low of 1/8 in 1942 and a high of 3 1/8 and a low of 1/2 in 1943. Since the evidence shows that a *267 free and ready market existed during all these years, the value of the stock may be established by the market quotations. ; . The conclusion that the stock of Frisco had value in 1940 is supported by the increase in earnings of the company before and after that year. From a low of $1,312,858 in 1938, the gross income increased to $3,994,709 in 1939 and $5,452,328 in 1940. In 1941 the gross income rose to $12,550,931. In fact the earnings increased to such an extent between 1942 and 1945 that Frisco was able to settle the claims of certain creditors totaling over $17,000,000. The respondent insists, however, that the plan of reorganization filed in 1940 by the Interstate Commerce Commission, which plan made no provision for the interests or equities of the stockholders, was an event which rendered the stock of Frisco worthless in that year. We do not agree. At the time it was filed the plan of the Interstate Commerce Commission was little more than a proposal. Until confirmed by the court it lacked finality. This is demonstrated by the events *268 which subsequently transpired. Objections were raised to the plan and in its decision rendered July 25, 1942, (In re: ) the court disapproved the plan and returned it to the Interstate Commerce Commission for reconsideration. A new plan was filed by the Commission in 1944. This plan likewise failed to make any provision for the stockholders of Frisco. By its decision rendered March 16, 1945, amended March 27, 1945 (In re: ) the court approved this latter plan. Only then did the plan actually become operative. We have examined the cases cited as authority by respondent but find that each involved facts so dissimilar to those before us as to be of little or no value as a precedent. Upon all the evidence before us, we hold that there was no identifiable event in 1940 which rendered the preferred stock of Frisco worthless in that year; that such stock had value at all times during 1940 and up to the time of its sale by the petitioner in 1941; and that the petitioner sustained a loss upon the sale of his stock in 1941 which is deductible in that year. Decision *269 will be entered under Rule 50.